IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ROBIN BLACK,<br><br>       **Plaintiff,**<br><br>v.<br><br>SUNPATH, LTD., et al.,<br>       **Defendants.** | Case No. 3:21-cv-00023<br><br>**District Judge William L. Campbell, Jr.**<br>**Magistrate Judge Jeffrey S. Frensley** |

### DEFENDANT SUNPATH, LTD.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant SunPath, Ltd. ("SunPath"), by and through undersigned counsel, submits this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, SunPath respectfully requests that the Court enter judgment in its favor and against Plaintiff Robin Black.

**I. INTRODUCTION**

This dispute is based on calls Plaintiff received that were allegedly in violation of the Telephone Consumer Protection Act ("TCPA"). Yet there is no genuine factual dispute that SunPath did not make any of the calls that form the basis of Plaintiff's claims, or direct or control the actions of the party that did make the calls at issue, such that Plaintiff's vicarious liability claim against SunPath fails as a matter of law.

SunPath is the administrator of vehicle service contracts ("VSCs"), including the VSC Plaintiff purchased to identify the Defendants. SunPath has provided sworn declaration and deposition testimony, as well as verified discovery responses, showing that it does not sell its products, does not make telemarketing calls *at all*, and specifically has never called Plaintiff. Further, the evidence is also clear and undisputed that SunPath did not direct or control the operations of the only Defendant alleged to have made such calls, Vehicle Activation

Department ("VAD"), a *d/b/a* for Defendant Celtic Marketing, LLC ("Celtic"). In contrast, Plaintiff has introduced no concrete evidence stating that an agency relationship existed between SunPath and VAD that would justify a finding of vicarious liability against SunPath here. Plaintiff failed to allege any specific factual allegations in her Complaint to show such a relationship existed, and discovery has confirmed that she has no basis for her unsupported allegations against SunPath. Accordingly, the Court should grant summary judgment in SunPath's favor and dismiss all of Plaintiff's TCPA claims against SunPath, with prejudice.

## II.   RELEVANT UNDISPUTED MATERIAL FACTS

Central to this Court's determination that SunPath is not subject to liability under the TCPA for any phone calls that form the basis of Plaintiff's claims, and should be dismissed from this case, are the following facts adduced during discovery. These facts are also set forth in the concurrently filed Statement of Undisputed Material Facts, as required by Local Rule 56.01(b).

1. Plaintiff filed this action for damages, claiming that all of the Defendants collectively violated the TCPA when VAD allegedly made calls to her cell phone, which is listed on the National Do Not Call Registry, using what Plaintiff claims was an automatic dialing system and prerecorded messages. Complaint ¶¶ 17-22, ECF No. 1; Deposition of Plaintiff Robin Black ("Black Dep.") at 26:13-14 ("The calls were made by VAD selling a product made by SunPath."), Ex. 1.

2. During a call allegedly made by VAD on October 18, 2019, Plaintiff purchased a VSC that was administered by SunPath, which she then immediately cancelled and received a refund. Compl. ¶¶ 24-26; Black Dep. 30:2-3 ("I purchased the policy on October the 18th"); Black Dep. Ex. 5 (VSC purchased by Robin Black); *see also* Black Dep. 99:16-20 (Plaintiff representing that she cancelled the policy as soon as she received it and received a full refund).

3. VAD is the only party that Plaintiff alleges made any call to her cell phone. *See*, *e.g.*, Black Dep. 26:13 ("The calls were made by VAD").

4. SunPath is the administrator of VSCs—in that it administers and pays for covered claims customers make under their SunPath-administered service contracts—including one such contract Plaintiff purchased from VAD. Garcia Decl. ¶ 4, ECF No. 17-1; SunPath's Responses to Plaintiff's Discovery Requests ("SunPath Disc. Resp.") at 15, Ex. 2.

5. Defendant Northcoast Warranty Services, Inc. ("Northcoast") is the financial obligor of extended VSCs administered by SunPath. SunPath Disc. Resp. at 15; Deposition of SunPath ("SunPath Dep.") at 20:16-21:21, Ex. 3.

6. Celtic is an independent third-party company that formerly had an agreement with SunPath, which authorized Celtic to market and sell SunPath-administered products on a non-exclusive basis, such that they offer SunPath-administered products alongside those of its competitors. Garcia Decl. ¶ 9; SunPath Disc. Resp. at 15.

7. Defendants VAD and Celtic are understood to be the same party; VAD is understood to be a d/b/a for Celtic. *Id.* ("VAD is understood to be a d/b/a of Celtic Marketing, LLC."); SunPath Dep. 73:4-7 ("Q: Who is VAD? A: I believe that's Celtic.").

8. SunPath does not sell the VSCs it administers; its products are sold by third-party sellers, much like auto manufacturers' cars are sold by independent dealers. SunPath does not make any outbound sales calls to consumers, and more specifically, did not make any of the alleged calls to Plaintiff that form the basis of Plaintiff's complaint. *See* Garcia Decl. ¶ 7, ECF No. 17-1. *See also* SunPath Dep. 17:16-17 ("Q: Is SunPath a telemarketer? A: No."); *Id.* at 34:1-4 ("Some third parties use phone systems. I don't know exactly what your definition of telemarketing is, but [SunPath doesn't] get involved in the sales process at all."); 35:7-10 ("Q:

You testified earlier that SunPath has no involvement in telemarketing. A: Yeah. I believe that's true. We have nothing to do with any sales process. We don't sell.").

9. SunPath has no role in or control over any operations of any independent third-party that it authorizes to market and sell SunPath's products on a non-exclusive basis, and these independent parties sell products of SunPath's competitors alongside SunPath's. Garcia Decl. ¶ 8-18; SunPath Disc. Resp. at 18.

10. The marketing operations of such independent companies, including how they obtain leads, what scripts they use, what equipment they use, and whether they offer consumers a SunPath product or the product of a competitor, are entirely determined by those independent third-party companies. Garcia Decl. ¶ 8-18; SunPath Disc. Resp. at 18; SunPath Depo. 45:8-9 ("[SunPath] would've expected [VAD] to follow all of the standards of conduct."); *Id.* at 47:19 to 48:5 ("Q: SunPath does not exercise much oversight over it's [sic] telemarketers? A: They're independent contractors. We have no ability to control or have oversight. When we get complaints, we investigate the complaints. And if we can determine that they're not doing things the way they're supposed to, then we reserve the right to terminate. But no. We don't have any oversight into independent companies.").

11. SunPath has produced the agreement it had with VAD that authorized VAD to market and sell SunPath-administered products on an independent, non-exclusive basis. *See* SunPath Dep. Ex. C ("VAD Agreement"). The VAD Agreement dictates that "[VAD] is at all times acting as an independent contractor providing services to [SunPath]. At no time is [VAD] an agent of [SunPath], and this Agreement does not authorize [VAD] at any time to act on behalf of [SunPath]. Nothing herein shall be construed to create a relationship of employer and

employee between [SunPath] and [VAD], nor does this Agreement constitute a partnership or joint venture between [SunPath] and [VAD]." *Id*. at ¶ 9 (Bates labeled SUNPATH_000011).

12. The VAD Agreement specifying that VAD acted only as an independent contractor also included Standards of Conduct, which stated in part that "SunPath Clients shall ***operate in accordance with laws and regulations*** of the Federal Trade Commission, the Federal Communications Commission . . . and all other applicable federal, state, and local regulations and laws. *Id*. at 8 (Bates labeled SUNPATH_000018); *id.* at 11 (Bates labeled SUNPATH_000021) ("SunPath clients shall follow all ***state and federal do not call laws and regulations***[.]").

13. SunPath also verified at deposition that it does not and did not direct or control the operations of any independent third-parties that sell its products, including VAD. SunPath Depo. 58:16-20 ("Q: Did SunPath monitor the calls made by [VAD] in 2019? A: I don't believe so. We may have requested calls if we thought there was a problem. That . . . would've been it."); *Id.* at 60:16-22 ("Q: What did SunPath do to assure that [VAD] had the express written consent of consumers before calling in 2019? A: We don't know anything about their marketing. They're completely independent from us. So unless we have a problem presented to us that we can look into, that's when we investigate something."); *Id*. 64:10-14 ("Q: You understand that [VAD] called Robin Black on a number of occasions in connection with the sale of a SunPath warranty? A: That's what I've been told. I have no way of verifying any of that.") *Id*. at 69:5-10 ("Q: [A]re you aware of calls that were made by [VAD] to Robin Black? A: No. . . . I know it's said that calls were made. That's all I know.").

14. As further evidence of SunPath's inability to direct or control the actions of these independent companies, its recourse if one of these companies fails to comply with contractual

Standards of Conduct is to terminate the agreement authorizing it to market SunPath products. *See Id*. 48:8-49:11 ("Q: So the call center marketers who sell SunPath extended service contracts, I mean we have a lengthy list of standards of conduct. What does SunPath do to make sure that those standards of conduct are being followed? A: As I said, there's nothing we can do. They're independent companies. I don't know how they sell. When we get a complaint, we can try to determine if they're abiding by the standards. . . . If we determined that the company is not abiding by . . . standards which they should be . . . then we reserve the right to terminate them. But we have no way of going to a third-party independent company and . . . controlling what they do.").

15. SunPath has no knowledge of VAD calling consumers without express written consent and was unaware of any allegedly unlawful calls associated with Plaintiff's claims until being contacted by Plaintiff in a pre-suit demand letter. *See Id*. 64:4-14 (SunPath is not aware of any confirmed instances of VAD making calls to consumers without their consent); SunPath Disc. Resp. at 18 (SunPath had no knowledge of the calls that form the basis of Plaintiff's Complaint prior to receiving pre-suit demands from Plaintiff).

16. SunPath terminated its agreement with VAD on or about January 29, 2021 based on VAD's lack of responsiveness to SunPath's communications. SunPath Disc. Resps. at 15; SunPath Dep. 83:5-15 ("Q: Do you recall why SunPath terminated its relationship with [VAD]? A: I believe it was because they were not responsive. We were trying to get a hold of them, and we had trouble getting hold of them.").

17. Plaintiff admitted during her deposition testimony that her allegations as to the relationship between SunPath and any company that sells SunPath's products are not based on

- 6 -

Case 3:21-cv-00023   Document 40   Filed 02/28/22   Page 6 of 19 PageID #: 223

any statement from any representative of SunPath. Black Dep. 125:20-22 ("Q: Is this belief based on any statements that anyone from SunPath has made to you? A: No.").

18. Plaintiff also stated in deposition that her basis for bringing claims against SunPath was her understanding that SunPath "pays . . . marketing companies to sell their policies." Black Dep. 93:7-9.

19. Plaintiff acknowledges that she understood SunPath does not make outgoing marketing calls, but that she did not review any interrogatory responses provided by SunPath describing its relationship with any independent third-party company authorized to sell its products. *See Id.* at 100:16-25 (Acknowledging "SunPath hires companies to make the calls" but with regard to SunPath's sworn interrogatory responses she was "not aware of any interrogatory statements. I haven't read that. If I haven't read that, that's on my end.").

20. And in her own discovery responses, Plaintiff fails to provide any evidence contradicting that SunPath is a separate entity from any other defendant in this matter and did not direct or control the party responsible for making the calls at issue; in fact, Plaintiff's discovery responses do not contain a single reference to SunPath. *See* Plaintiff's Responses to Defendants' Discovery Requests ("Plaintiff's Disc. Resp."), Ex. 4.

21. Specifically, Plaintiff provided no response to Interrogatory No. 2, requesting that she state all facts in support of the contention that either SunPath or Northcoast was vicariously liable for any calls identified as the basis for this lawsuit. *See id.* at 2.

22. Indeed, Plaintiff admitted in her deposition testimony that her understanding of the relationships between the Defendants in this matter was not based on any representation from any Defendant but on Plaintiff's own unspecified "research that [Plaintiff has] done into TCPA law, specifically as it relates to unsolicited sales calls from car warranty companies." Black Dep.

93:25-94:7; *id.* at 123:13-127:4 (Plaintiff representing that no Defendant represented to her that it controlled the actions of VAD, and that her allegations are based on her lay opinions regarding "the dishonesty of the auto warranty industry").

### III. LEGAL STANDARD

Summary judgment should be granted where no genuine issue of material fact exists for resolution at trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Summary judgment is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a disfavored procedural shortcut." *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

"A genuine issue of material fact exists when there are 'disputes over facts that might affect the outcome of the suit under the governing law.'" *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330.

"To prevent summary judgment, the nonmoving party must have created a genuine issue of material fact by offering enough evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999) (quoting *Anderson*, 477 U.S. at 248). "To survive summary judgment, the plaintiff is required to do more than make vague allegations or conclusory statements[.]" *Drumbarger v. Crosby*, No. 3:11-CV-0684, 2013 U.S. Dist. LEXIS 189085, at *27 (M.D. Tenn. Feb. 27, 2013) (citing *Triplett v. Connor*, 109 Fed.App'x 94 (6th Cir. 2004)). The nonmoving party must point to

- 8 -

"concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989). "Evidence that is merely colorable or not significantly probative is not sufficient" to create a genuine issue of material fact. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 282-83 (6th Cir. 2018) (quoting *Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 403 (6th Cir. 2014)). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then "the moving party is entitled to judgment as a matter of law[.]" *Celotex*, 477 U.S. at 322.

## IV. ARGUMENT

Plaintiff's Complaint failed to state any claim against SunPath,[1] and discovery has simply confirmed that Plaintiff's claims against SunPath have no basis in fact or law. Even viewed in the light most favorable to Plaintiff, there is no factual dispute that SunPath was not directly or vicariously liable for making the calls at issue.

### A. There Is No Genuine Factual Dispute that SunPath Is Not Directly Liable for any Alleged TCPA Violation.

There is no dispute that SunPath is not directly liable for any TCPA violations because Plaintiff does not allege that SunPath initiated any of the calls at issue. Direct liability under the TCPA applies only to entities that "initiate" the telemarketing calls by taking "the steps necessary to physically place a telephone call." *See In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6582-83 ¶¶ 24, 26 (2013). Plaintiff alleges that Defendant VAD is the only party

---

[1] SunPath and Northcoast filed a Motion to Dismiss Plaintiff's Complaint, ECF Nos. 16-17, for lack of jurisdiction and failure to state a claim, which the Court has not yet ruled on. SunPath does not waive any arguments raised in its Motion to Dismiss by filing this Motion for Summary Judgment, and represents that this Motion bolsters the arguments in its Motion to Dismiss, and shows the futility of any claim Plaintiff has raised against SunPath.

- 9 -

responsible for directly initiating any of the call(s) at issue. *See* Compl. ¶¶ 24-26; *see also*, *e.g.*, Black Dep. 26:13 ("The calls were made by VAD"). In sworn testimony and its verified discovery responses, SunPath confirmed it does not make any marketing calls, and has never made any calls to Plaintiff. *See* Garcia Decl. ¶ 7, ECF No. 17-1. *See also* SunPath Dep. 17:16-17 ("Q: Is SunPath a telemarketer? A: No."). Plaintiff does not refute SunPath's testimony that SunPath did not directly initiate any of the calls at issue. Accordingly, the Court should grant summary judgment in SunPath's favor with respect to any alleged violations of the TCPA via a theory of direct liability.

### B. There Is No Genuine Factual Dispute that SunPath Is Not Vicariously Liable for any Alleged TCPA Violations.

Because VAD is the only party Plaintiff alleges directly made any of the calls at issue, Plaintiff's claims against SunPath rely entirely on the premise that SunPath is vicariously liable for VAD's actions. But there is no genuine factual dispute that SunPath is not vicariously liable for any alleged violations of the TCPA because Plaintiff has not provided any concrete evidence to support her contention that a principal-agent relationship existed between SunPath and VAD. Plaintiff's Complaint failed to state any claims against SunPath based on a theory of vicarious liability at the pleading stage,[2] and discovery further cemented that Plaintiff's claims are meritless and warrant dismissal on summary judgment.

A finding of vicarious liability relies on a showing that an agency relationship existed between the defendant and the alleged caller pursuant to agency principles of actual authority, apparent authority, or ratification. *See In re Dish Network*, 28 FCC Rcd. at 6584 ¶ 28 ("[W]e

---

[2] *See* SunPath's Memorandum in Support of its Motion to Dismiss, at 21-24, ECF No. 17 (arguing that Plaintiff's Complaint was absent of allegations that state a valid claim for vicarious liability against SunPath); *see also*, *e.g.*, *Cunningham v. Lifestyles Dev., LLC*, CIVIL ACTION NO. 4:19-CV-00006-ALM-CAN, 2019 U.S. Dist. LEXIS 154112, at *8 (E.D. Tex. Aug. 8, 2019) (A complaint that is "devoid of any facts showing that [a defendant] had control over any other defendant, agent, or caller" must be dismissed.).

find that the seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles."). The factual record shows that no principal-agent relationship existed between SunPath and VAD based on any of these principles.

### 1. **VAD acted without actual authority.**

The factual record shows that SunPath cannot be subject to vicarious liability via a theory of actual authority because the agreement between SunPath and VAD provides that VAD was an independent contractor required to comply with all applicable laws related to marketing. A finding of liability through actual authority requires a showing that the parties acknowledge a principal-agent relationship explicitly exists, and that "the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 373 (6th Cir. 2015) (quoting Restatement (Third) of Agency § 2.01).

Central to the determination of whether an agency relationship existed through actual authority is the degree of control the purported principal exercised over the alleged agent. *See Premier Bus. Group, LLC v. Red Bull of N. Am., Inc.*, Case No. 08-CV-01453, 2009 U.S. Dist. LEXIS 91647, at *16 (N.D. Ohio Sep. 30, 2009) ("[A]gency is not created merely because a company is an authorized distributor, but that agency is rather a question of control.") (citing *Bruce v. ICI Ams.*, 933 F. Supp. 781, 790 (S.D. Iowa 1996)); *Arnson v. General Motors Corp.*, 377 F. Supp. 209 (N.D. Ohio 1974) (finding no agency relationship existed because purported principal did not exercise control over authorized dealers).[3]

---

[3] *See also Jones v. Royal Admin. Servs.*, 887 F.3d 443, 450 (9th Cir. 2018) ("In determining whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient.'") (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)); *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514, 525 (N.D.W. Va. 2016)

- 11 -

The agreement between SunPath and VAD shows that VAD was not SunPath's agent, and certainly did not have actual authority to engage in any behavior that violated the TCPA. First, the agreement provided that VAD was at all times acting as an independent contractor. *See* VAD Agreement ("[VAD] is at all times acting as an independent contractor providing services to [SunPath]."). Additionally, the Standards of Conduct in the agreement provided that VAD "shall ***operate in accordance with laws and regulations*** of . . . the Federal Communications Commission . . . and all other applicable federal, state, and local regulations and laws." *Id.* at 8. Plaintiff has offered no evidence that contradicts that the provisions of this agreement represent the relationship between SunPath and VAD. *See* Black Dep. 100:16-25; *see also* Plaintiff's Disc. Resp. at 2 (Plaintiff provided no evidence in her discovery responses or deposition testimony regarding her allegations of vicarious liability). And there is similarly no dispute that SunPath did not direct or control any operations of VAD, or have knowledge of how VAD operated. *See* SunPath Dep. 58:16-20 ("Q: Did SunPath monitor the calls made by [VAD] in 2019? A: I don't believe so. We may have requested calls if we thought there was a problem. That . . . would've been it."); *id* at 48:8-49:11 (companies authorized to market SunPath-administered products do so independently and without any direction of SunPath); *id.* at 60:16-22 (same); *see also id*. at 64:10-14 (SunPath had no knowledge of the alleged calls to Plaintiff); *id*. at 69:5-10 (same).

---

(granting summary judgment based on lack of apparent authority for TCPA defendant because with "all of these facts together in the light most favorable to Plaintiffs, the evidence does not support a finding that [the purported principal] exercises control over the actual marketing"); *Kristensen v. Credit Payment Servs. Inc.*, Case No. 2:12-cv-00528-APG-PAL, 2015 U.S. Dist. LEXIS 96036, at *19 (D. Nev. July 20, 2015) (granting summary judgment in favor of TCPA defendant because the record reflected there was no showing of a manifestation of control over the purported agent).

There is no dispute that VAD was an independent contractor, and not an agent of SunPath, and that VAD simply agreed to comply with all applicable laws and regulations when marketing SunPath-administered products. The Sixth Circuit has ruled that in the context of summary judgment, a finding that the party responsible for making calls in violation of the TCPA was not an agent of the defendant, as is the case here, "necessarily dooms [plaintiff's] claims based on an expressed-agency theory[.]" *Keating*, 615 F. App'x at 373; *see also Kahler v. Fid. Mut. Life*, No. 5:16CV287, 2018 U.S. Dist. LEXIS 43555, at *10 (N.D. Ohio Mar. 16, 2018) (finding on motion for summary judgment that no actual agency relationship existed when caller was "its own independent business that sold VSCs for multiple companies without . . . direct supervision").[4] Based on the express provisions of the agreement with VAD, and the fact that SunPath did not in any way direct or control VAD's calling operations, there is no dispute that SunPath cannot be subjected to liability in this matter through a theory of actual agency.

### 2. There is no factual dispute that VAD acted without apparent authority.

There is no genuine issue of material fact that SunPath is not subject to liability through apparent liability because SunPath did not manifest authority for VAD to make any unlawful calls to Plaintiff. The Sixth Circuit has held:

---

[4] Other jurisdictions have also ruled that actual authority does not exist when examining similar contractual provisions. *See*, *e.g.*, *McDermet v. DirectTV, LLC*, Civil Action No. 19-11322-FDS, 2021 U.S. Dist. LEXIS 11123, at *21 (D. Mass. Jan. 21, 2021) (ruling in a TCPA case that actual authority did not exist because the defendants required the telemarketers to comply with state and federal telemarketing laws); *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 365 (N.D. Ind. 2021) (citing *Carlisle v. Deere & Co.*, 576 F.3d 649 (7th Cir. 2009)) (finding that a dealer is not an agent of the manufacturers of the products it sells, especially when the dealer sells multiple brands); *Simmons v. Charter Commc'ns*, *Inc.*, 222 F. Supp. 3d 121, 137 (D.Conn. 2016) ("there is no better way to ensure compliance with the TCPA than to include such compliance as an essential term of the contract."); *Makaron v. GE Sec. Mfg.*, CV-14-1274-GW (AGRx), 2015 U.S. Dist. LEXIS 75240, at *19-20 (C.D. Cal. May 18, 2015) (granting motion for summary judgment due to lack of actual agency despite license to use trademarks and logos because applicable contracts indicated the dealers were independent contractors).

- 13 -

> [U]nder the theory of apparent authority, a principal will incur liability for the acts of an 'agent' if the principal 'held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority.' Thus, the apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent.

*Keating*, 615 F. App'x at 373-74 (citations and quotations omitted). Importantly, in the context of the TCPA, the relevant determination for a finding of apparent authority is not that the principal authorized *any* conduct by the purported agent; there must be proof that the purported principal specifically authorized *the unlawful calling practices*. *See id.* at 374 ("nothing in the record before this court reasonably can be construed to indicate that the defendants held out to third parties, or to anyone else, that [the purported agent] was authorized to send text messages to individuals who had not agreed to receive them."). The fact that a party markets or sells a company's products or services does not support that an agency relationship exists. *See Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (finding no vicarious liability existed because plaintiff failed to allege sufficient facts to show "how he reasonably relied, to his detriment, on any apparent authority with which he alleges Subway cloaked T-Mobile [while marketing its products]."). The fact that a party sells the products of a competitor alongside those of the purported principal also weighs against a finding of apparent authority. *See Monitronics*, 223 F. Supp. 3d 514, 527-28 (N.D.W. Va. 2016) (citing *Makaron*, 2015 U.S. Dist. LEXIS 75240).

Under this standard, the Court should grant summary judgment in SunPath's favor, as the record reflects that the only basis for Plaintiff's allegations against SunPath is that she purchased a SunPath product. *See* Black Dep. 93:7-9 (Plaintiff stating her basis for bringing claims against SunPath was her understanding that SunPath "pays . . . marketing companies to sell their policies."). Meanwhile, SunPath has established that it did not in any way direct or control the

actions of VAD, had no knowledge that VAD engaged in any unlawful marketing calls, or that it was even aware that VAD called Plaintiff before receiving notice of Plaintiff's claims here. *See* SunPath Depo. 48:8-49:11 (SunPath did not direct or control any independent third-party authorized to sell its products); SunPath Disc. Resp. at 18 (SunPath had no knowledge of the calls that form the basis of Plaintiff's Complaint prior to receiving pre-suit demands from Plaintiff). And while VAD was authorized to sell SunPath products, it did so non-exclusively, such that VAD sold SunPath's products alongside those of its competitors. *See* Garcia Decl. ¶ 9; SunPath Disc. Resp. at 15. Plaintiff provided no evidence in her discovery responses to support any claims that SunPath in any way manifested authority to VAD to make any of the calls at issue. *See* Plaintiff's Disc. Resp. (Plaintiff's discovery responses provided nothing more than generalized allegations as to "Defendants" collectively without pointing to a single individual act by SunPath.).[5] That is because she has none. As she admitted in her deposition, her allegations concerning the relationship between SunPath and any company that sells SunPath's products are not based on any statement from any representative of SunPath. Black Dep. 125:2-22 ("Q: Is this belief based on any statements that any one from SunPath has made to you? A: No.").

The fact that Plaintiff was offered or sold a SunPath product does not prove the existence of an agency relationship; in order to show an agency relationship existed through apparent authority, there must be a manifestation by the alleged principal (SunPath) that it exercised

---

[5] Plaintiff's unsubstantiated collective allegations that failed to state a claim at the pleadings stage are even more ripe for dismissal after being further disproven in discovery. *See, e.g., Westerfield v. United States*, No. 1:07 CV 3518, 2013 U.S. Dist. LEXIS 142670, at *28 (N.D. Ohio Oct. 2, 2013) (finding that defendant was entitled to summary judgment because plaintiff "lumps him in with [the other] defendants"); *Brenkus v. Healthy Life Mktg., Inc.*, No. 4:04CV1763, 2007 U.S. Dist. LEXIS 1250, at *29 (N.D. Ohio Jan. 5, 2007) (granting summary judgment because Plaintiff "provides little detail with regard to his claims against Defendants" and "essentially lumps his claims against these defendants with those against [the other] Defendants").

control over the allegedly unlawful actions. *See Keating*, 615 F. App'x at 374. Plaintiff has not offered any concrete evidence—or any evidence whatsoever—contradicting SunPath's sworn testimony that it did not manifest any control over VAD's telemarketing. Accordingly, there is no issue of material fact regarding the absence of an agency relationship through apparent authority that could subject SunPath to liability for Plaintiff's claims.

### 3. There is no factual dispute that SunPath did not ratify any unlawful conduct.

There is no dispute that SunPath did not ratify any unlawful conduct of VAD because SunPath did not have knowledge of or approve of VAD's actions. A party may only "be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits." *Keating*, 615 F. App'x at 372 (citing *Dish Network*, 28 FCC Rcd. at 6586-87 "Such ratification may occur 'through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences.'" *Id.* Furthermore, in the context of alleging vicarious liability through ratification, "the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016) (citations and quotations omitted).

As established at length above, no agency relationship existed between SunPath and VAD—the agreement between SunPath and VAD explicitly provided that VAD was an independent contractor, and SunPath did not manifest that VAD had any authority to make unlawful marketing calls. So the prerequisite agency relationship required for a showing of ratification is not present. Regardless, the record also reflects that SunPath did not have any knowledge of how VAD conducted its business generally, that VAD made any calls to Plaintiff, or engaged in any unlawful conduct. *See*, *e.g.*, SunPath Depo. 48:8-49:11 (SunPath does not control how independent third-parties market or sell SunPath products); *see also* SunPath Dep.

64:4-14 (SunPath is not aware of any confirmed instances of VAD making calls to consumers without their consent); SunPath Disc. Resp. at 18 (SunPath had no knowledge of the calls that form the basis of Plaintiff's Complaint prior to receiving pre-suit demands from Plaintiff). Simply put, SunPath could not ratify conduct it had no knowledge of.

Moreover, the record is also undisputed that SunPath also received no benefit whatsoever from VAD's interactions with Plaintiff; her momentary purchase of a policy resulted in a full refund of her brief down payment, such that there was no purported benefit for SunPath to even retain here. *See* Black Dep. 99:16-20 (Plaintiff representing that she cancelled the policy as soon as she received it and received a full refund). In short, *none* of the elements of ratification are present here.

Based on this record—when the alleged unlawful calls were made "without the knowledge or acquiescence" of the party in question—the Sixth Circuit has confirmed that summary judgment in favor of the Defendant is appropriate. *Keating*, 615 F. App'x at 372; *see also Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243 (4th Cir. 2018) (granting summary judgment for defendants was proper where Plaintiff failed to establish agency through ratification).

The undisputed factual record shows that SunPath is not vicariously liable for any alleged violation of the TCPA by VAD pursuant to any theory of actual authority, apparent authority, or ratification. Accordingly, the Court should grant summary judgment in favor of SunPath and dismiss Plaintiff's claims against it with prejudice.

## V.     CONCLUSION

For the foregoing reasons, SunPath respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in its favor and against Plaintiff.

- 17 -

Case 3:21-cv-00023   Document 40   Filed 02/28/22   Page 17 of 19 PageID #: 234

Dated: February 28, 2022								Respectfully Submitted,

By: /s/ *Cole Dowsley*
Cole Dowsley
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, Tennessee 37203
(615) 465-6003
cole@thompsonburton.com

Gregory M. Caffas
(admitted *pro hac vice)*
ROTH JACKSON GIBBONS CONDLIN, PLC
8200 Greensboro Drive, Suite 820
McLean, Virginia
T: 703-485-3533
F: 703-485-3525
gcaffas@rothjackson.com

Joseph P. Bowser,
(admitted *pro hac vice*)
ROTH JACKSON GIBBONS CONDLIN, PLC
1519 Summit Avenue, Suite 102
Richmond, VA 23230
T: 804-441-8701
F: 804-441-8438
jbowser@rothjackson.com

*Counsel for Defendant SunPath, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, the foregoing DEFENDANT SUNPATH, LTD.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was filed through the Court's electronic filing system and will be sent electronically to the parties via the Court's electronic filing system.

/s/ <i>Cole Dowsley</i><br>
Cole Dowsley