IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ROBIN BLACK, | § |
| Plaintiff, | § Case No. 3:21-cv-00023 |
| v. | § Hon. Judge Aleta A. Trauger |
| SUNPATH, LTD. ET AL., | § |
| Defendant. | § |

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT
OF HER RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

AND NOW, Plaintiff Robin Black by and through her attorneys, hereby files this notice of supplemental authority in support of her Response in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 59) regarding *McCurley v Royal Seas Cruises, Inc.*, Case No. 21-55099, 2022 U.S. App. LEXIS 9079 (9th Cir. April 5, 2022). In that case, where "[Defendant] had knowledge of facts that would have led it to investigate [third-party lead generator's] lead generation activities to determine if it was calling only consenting individuals, but instead accepted leads generated by [third-party lead generator's] calls with scant investigation", the court recognized that a combination of the facts of the case, in addition to the "widespread TCPA violations in the cruise industry" supported a finding that a reasonable jury could find that the Defendant ratified the TCPA violations of its third-party lead generator[1].

Here, SunPath's corporate representative confirmed that SunPath does not make any effort to ensure that the entities in which it contracts with complies with their standards of

---

[1] The 9th Circuit in *McCurley* confirmed a lack of apparent and actual authority. As set forth in the Amended Response in Opposition to Summary Judgment (Doc. No. 59), there is a sufficient basis for both apparent and actual authority between SunPath and Celtic here. Plaintiff's reliance on *McCurley* is for the theory of ratification only.

1

conduct, or the TCPA. Specifically, Mr. Garcia, when asked, "What does SunPath do to assure that Celtic had the express written consent of consumers before calling in 2019?" testified that "we don't know anything about their – marketing." Garcia Dep. at 104, Bates labeled Black 00105. Mr. Garcia confirmed that SunPath was aware that it lacked knowledge as to whether or not their third-party agent's complied with the TCPA. Despite receiving a letter from Plaintiff's counsel, notifying SunPath of the TCPA violation in this case, SunPath did not perform an audit of its call centers. Id. at 105, Bates labeled Black 00106. SunPath's **choice** to be unaware of the details of how its products are marketed, coupled with the well documented widespread TCPA violations in the extended vehicle warranty industry and Plaintiff's plethora of evidence to confirm the unlawful practices, is sufficient to determine that a reasonable jury could find that SunPath ratified the actions of Celtic. In fact, the telemarketing calls selling "extended warranties" or "vehicle service contracts" have become so prolific and disruptive to the lives of American consumers that the Federal Trade Commission ("FTC") has issued a press release warning consumers to "slam on the brakes" and "hang up" on those callers. See Federal Trade Comm'n, *Hang up on auto warranty robocalls*, (May 21, 2021), *available at* https://consumer.ftc.gov/consumer-alerts/2021/05/hang-auto-warranty-robocalls (last visited June 30, 2022).

  This case and *McCurley* both involved a company (here SunPath) accepting and continuing to accept leads generated through unlawful calls, and therefore ratify the violations of their lead generating/telemarketing agents through their willful ignorance.

  Because a reasonable jury could find that SunPath ratified the violative actions of its agents and Plaintiff has submitted sufficient evidence in support of her claims and an agency relationship, SunPath cannot meet its burden to be afforded summary judgment.

                Respectfully Submitted,

Dated: June 30, 2022           */s/ Jacob U. Ginsburg*
                   Jacob U. Ginsburg, Esq.

Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888
teamkimmel@creditlaw.com

## CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg hereby certify that on June 29, 2022, I filed a copy of the foregoing document and its attachment with the Clerk of Court using the Court's CM/ECF system, which will generate notice of the filing and service on the following counsel:

Cole Dowsley
Thompson Burton PLLC
1801 West End Ave., Ste 1550
Nashville, TN 37203

Gregory M. Caffas (phv)
Joseph P. Bowser (phv)
Roth Jackson Gibbons Condlin, PLC
8200 Greensboro Dr., Ste 820
McLean, VA 23230

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.



Neutral

As of: June 16, 2022 8:50 PM Z

# *McCurley v. Royal Seas Cruises, Inc.*

United States Court of Appeals for the Ninth Circuit

March 8, 2022, Argued and Submitted, Pasadena, California; April 5, 2022, Filed

No. 21-55099

**Reporter**
2022 U.S. App. LEXIS 9079 *

JOHN **MCCURLEY**; DAN DEFOREST, individually and on behalf of all others similarly situated, Plaintiffs-Appellants, v. **ROYAL SEAS** CRUISES, INC., Defendant-Appellee.

**Notice:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Subsequent History:** Request denied by *McCurley v. Royal Seas Cruises, 2022 U.S. App. LEXIS 9942 (9th Cir. Cal., Apr. 13, 2022)*

**Prior History:** [*1] Appeal from the United States District Court for the Southern District of California. D.C. No. 3:17-cv-00986-BAS-AGS. Cynthia A. Bashant, District Judge, Presiding.

*McCurley v. Royal Sea Cruises, Inc., 2021 U.S. Dist. LEXIS 17619, 2021 WL 312005 (S.D. Cal., Jan. 28, 2021)*

## Core Terms

apparent authority, vicarious liability, summary judgment, ratification, customers, transfers

## Case Summary

### Overview
HOLDINGS: [1]-The district court's grant of summary judgment in favor of defendant as to apparent authority was affirmed because the record did not support a finding that defendant's agent had apparent authority from defendant to call nonconsenting individuals. Moreover, there was no record evidence of whether, or when, between making the phone call and transferring the individual answering to a live person at defendant, the agent stated that it was calling on behalf of a third party or mentioned the defendant's name; [2]-The district court's summary judgment in favor of defendant as to ratification was reversed because the facts of the case, in combination with the evidence of widespread Telephone Consumer Protection Act (TCPA) violations in the cruise industry, would support a finding that defendant knew facts that should have led it to investigate agent's work for TCPA violations.

### Outcome
Judgment affirmed in part, reversed in part, and remanded.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

### *HN1*[ ] **Reviewability of Lower Court Decisions, Preservation for Review**

The appellate court's general rule is that an issue may not be raised for the first time on appeal.

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

### *HN2*[ ] **Reviewability of Lower Court Decisions, Preservation for Review**

To avoid waiver by failing to plead an issue, plaintiffs may make known during discovery their intention to pursue recovery on the theory omitted from their complaints.

Antitrust & Trade Law > Consumer Protection > Telemarketing

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

Business & Corporate Law > ... > Establishment > Elements > Application of *Agency* Law Principles

Civil Procedure > ... > Federal & State Interrelationships > Federal Common Law > Applicability

[HN3][ ] Consumer Protection, Telemarketing

The Federal Communications Commission, the *agency* responsible for implementing the Telephone Consumer Protection Act, instructs that the relationship between a seller and a telemarketer should be assessed under federal common law *agency* principles.

Business & Corporate Law > *Agency* Relationships > Ratification > Avoidance

Business & Corporate Law > *Agency* Relationships > Ratification > Scope

Business & Corporate Law > *Agency* Relationships > Ratification > Proof

Business & Corporate Law > *Agency* Relationships > Ratification > Express & Implied Ratification

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Conduct of Parties

[HN4][ ] Ratification, Avoidance

Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations. Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority. A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents. A principal assumes the risk of lack of knowledge and may be found willfully ignorant if the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation.

Business & Corporate Law > *Agency* Relationships > Authority to Act > Types of Authority

[HN5][ ] Authority to Act, Types of Authority

An act is ratifiable if the actor acted or purported to act as an agent on the person's behalf.

**Counsel:** For JOHN **MCCURLEY**, DAN DEFOREST, individually and on behalf of all others similarly situated, Plaintiffs - Appellants: Adrian Bacon, Esquire, Law Offices of Todd Friedman, PC, Woodland Hills, CA; Todd M. Friedman, Law Offices of Todd M. Friedman, Woodland Hills, CA; Abbas Kazerounian, Attorney, Kazerouni Law Group, APC, Costa Mesa, CA; Matthew Michael Loker, Esquire, Attorney, Loker Law, Apc, Arroyo Grande, CA.

For **ROYAL SEAS** CRUISES, INC., Defendant - Appellee: Richard Wayne Epstein, Esquire, Attorney, John Pelzer, Greenspoon Marder PA, Fort Lauderdale, FL; Anton N. Handal, Attorney, MURCHISON & CUMMING, San Diego, CA; Blake Osborn, Dentons US, LLP, Los Angeles, CA.

For ELECTRONIC PRIVACY INFORMATION CENTER, NATIONAL CONSUMER LAW CENTER, Amici Curiae: Alan J. Butler, Senior Counsel, Alan Butler, Washington, DC.

**Judges:** Before: WARDLAW and HURWITZ, Circuit Judges, and ROSENTHAL,[**] District Judge.

## Opinion

MEMORANDUM[*]

*Royal Seas* Cruises, Inc., hired Prospects DM, Inc., to generate leads and initiate telephone calls to

---

[**] The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

[*] This disposition is not appropriate for publication and is not precedent except as provided by *Ninth Circuit Rule 36-3*.

prospective consumers for cruise **[*2]** packages. The issue for decision is whether *Royal Seas* is liable under the Telephone Consumer Protection Act ("TCPA") for prerecorded voice calls made by Prospects to those, including plaintiffs John *McCurley* and Dan Deforest, who had not given prior express consent to be called. *See* Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1041 (9th Cir. 2017) (citing 47 U.S.C. § 227(a)(5); *id.* § 227(b)(1)(A)(iii)) (explaining TCPA violations). The district court granted summary judgment to *Royal Seas*. We have jurisdiction over the plaintiffs' appeal under 28 U.S.C. § 1291. Reviewing de novo, Bell v. Wilmott Storage Servs., LLC, 12 F.4th 1065, 1068 (9th Cir. 2021), we affirm in part and reverse in part.

**1. Waiver**. HN1[↑] Our "general rule" is that "an issue may not be raised for the first time on appeal." United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir. 1990). *Royal Seas* argues that the plaintiffs waived their argument that it is vicariously liable for Prospects's TCPA violations because the plaintiffs did not allege vicarious liability in their pleadings. Alternatively, *Royal Seas* argues that the plaintiffs waived any arguments about actual and apparent authority because they asserted only ratification as the basis for vicarious liability in their motion for summary judgment and in their response to *Royal Seas*'s cross-motion.

The plaintiffs did not waive their vicarious liability arguments based on a failure to specifically allege them in the consolidated complaint. HN2[↑] To avoid waiver by **[*3]** failing to plead an issue, plaintiffs may "make known during discovery their intention to pursue recovery on the . . . theory omitted from their complaints." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). *Royal Seas* had ample notice of, and opportunity to develop facts about, the actual and apparent authority and the ratification theories the plaintiffs asserted. Notice of these theories came from the plaintiffs' class certification motion filed in July 2018 and the district court's class certification order issued in March 2019, both long before discovery closed in February 2020. The plaintiffs also presented arguments on apparent authority and ratification in their motion for summary judgment. We hold, however, that the plaintiffs did waive an actual authority theory of vicarious liability by failing to assert it either in their pleadings or at summary judgment. *See Padgett v. Wright, 587 F.3d 983, 985 n.2. (9th Cir. 2009)* (per curiam). None of the narrow exceptions to waiver applies. *See* Carlson, 900 F.2d at 1349.

**2. Nondelegable Duty**. The plaintiffs argue that *Royal Seas* had a nondelegable duty under the TCPA to ensure that Prospects had prior express consent for each call it made to solicit potential customers for *Royal Seas*.[1]

We disagree. HN3[↑] The Federal Communications Commission ("FCC"), the *agency* **[*4]** responsible for implementing the TCPA, instructs that the relationship between a seller and a telemarketer should be assessed under federal common law *agency* principles. In re Joint Petition Filed by Dish Network, LLC, 28 F.C.C. Rcd. 6574, 6574 (May 9, 2013). Our precedent defers to the FCC's interpretation that the TCPA requires vicarious liability, not strict liability. Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068, 1072 (9th Cir. 2019). The plaintiffs present no compelling reason why we should change that position. *See* Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 168, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016).

**3. Vicarious Liability**. The plaintiffs also argue that *Royal Seas* is vicariously liable for Prospects's placements of prerecorded voice calls to individuals without their prior express consent. The plaintiffs rely on apparent authority and ratification.

HN4[↑] "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." RESTATEMENT (THIRD) OF AGENCY § 2.03. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Id.* § 4.01(1). "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies **[*5]** a reasonable assumption that the person so consents." *Id.* § 4.01(2).[2] A principal assumes the risk of lack of

---

[1] The plaintiffs did not present this argument at summary judgment; however, because it is a pure question of law, we may address it. Carlson, 900 F.2d at 1349; *see also* In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 992 (9th Cir. 2010) ("[W]aiver is a discretionary, not jurisdictional, determination.").

[2] HN5[↑] An act is ratifiable "if the actor acted or purported to act as an agent on the person's behalf." *Id.* § 4.03. Although the scope of its *agency* is in dispute, Prospects is at least an agent of *Royal Seas* for the purpose of generating leads. *See* Kristensen v. Credit Payment Servs. Inc., 879 F.3d 1010, 1015

knowledge and may be found willfully ignorant if "the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." Id. *§ 4.06 cmt. d*.

The record does not support a finding that Prospects had apparent authority from **Royal Seas** to call nonconsenting individuals. When Prospects placed calls, it asked an individual who answered "qualifying questions" about products and services that ranged from home improvement to medical equipment to leisure packages, including cruises. **Royal Seas** approved the scripts used, but no script is in the record. There is no record evidence of whether, or when, between making the phone call and transferring the individual answering to a live person at **Royal Seas**, Prospects stated that it was calling on behalf of a third party or mentioned "**Royal Seas**." *Cf. Salyers v. Metro. Life Ins. Co., 871 F.3d 934, 940-41 (9th Cir. 2017)*. There is no basis to find that the person answering a Prospects call would reasonably believe that Prospects was acting on behalf of **Royal Seas** before the point of the transfer. We affirm the district court's **[*6]** grant of summary judgment in favor of **Royal Seas** as to apparent authority.

But that does not end the inquiry. Drawing reasonable inferences in the light most favorable to the plaintiffs, *Ironhawk Techs., Inc. v. Dropbox, Inc., 2 F.4th 1150, 1159 (9th Cir. 2021)*, there is a material dispute of fact as to whether **Royal Seas** ratified Prospects's acts. **Royal Seas** had knowledge of facts that would have led it to investigate Prospects's lead-generation activities to determine if it was calling only consenting individuals, but instead accepted leads generated by Prospects's calls with scant investigation. **Royal Seas** knew that Prospects placed calls using prerecorded voices, a prima facie violation of the TCPA. **Royal Seas** also knew that it received 2.1 million warm-transferred calls from Prospects between January 2017 and June 2018. **Royal Seas** knew that TCPA compliance required each call to be to an individual who had previously "agreed" to be called by **Royal Seas** by clicking "next" after submitting personal contact information and seeing a consent box on websites such as www.diabeteshealth.info and www.yourautohealthlifeinsurance.com. **Royal Seas** knew that the calls Prospects placed to individuals who had allegedly consented by checking forms on the website www.diabeteshealth.info **[*7]** generated 80,081 warm transfers to **Royal Seas** in 2017. The plaintiffs submitted expert testimony that this number of transfers, which was only a subset of the calls Prospects placed, from this lead-generation website during this period is implausible at best. The expert testimony also addressed several other websites responsible for generating the 2.1 million transfers, such as www.123FreeTravel.com, and concluded that the volume of traffic to these sites, much less the number of leads from consenting individuals that could be reasonably harvested from them, was very low.

**Royal Seas** also knew that of the 560 customers whom Prospects warm-transferred and who made purchases from **Royal Seas**, 13 percent had phone numbers that did not match the customer consent data that Prospects had provided to **Royal Seas**, and 31 percent did not have a matching phone number and last name. The amount of mismatched data in the record cannot all be explained by data-entry errors or family members with different last names. The number for one of the named plaintiffs, John **McCurley**, for example, was associated with the name "Jose Fernandez." There is evidence that **Royal Seas**'s employees knew of the discrepancies **[*8]** because when they spoke with the transferred customers, because they addressed the customers by the first name that Prospects provided.

These facts, in combination with the evidence of widespread TCPA violations in the cruise industry, would support a finding that **Royal Seas** knew facts that should have led it to investigate Prospects's work for TCPA violations. *See Henderson, 918 F.3d at 1076*. We reverse the district court's summary judgment in favor of **Royal Seas** as to ratification.

**AFFIRMED in part, REVERSED in part, and REMANDED**. Each party to bear its own costs.

---

**End of Document**

---

*(9th Cir. 2018)* (because Click Media contracted with AC Referral to generate leads for prospective customers, AC Referral was an agent of Click Media for the purpose of the ratification analysis).