# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **ROBIN BLACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00023** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **SUNPATH LTD., VEHICLE** | ) | |
| **ACTIVATION DEPARTMENT d/b/a** | ) | |
| **VAD, and CELTIC MARKETING, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

Defendant SunPath Ltd. ("SunPath") has filed a Motion for Summary Judgment (Doc. No. 39), to which Robin Black has filed a Response (Doc. No. 59), and SunPath has filed a Reply (Doc. No. 65). For the reasons set out herein, the motion will be granted, and SunPath's earlier-filed Motion to Dismiss (Doc. No. 16) will be denied as moot.

## I. BACKGROUND

The federal Telephone Consumer Protection Act ("TCPA") makes it unlawful to, among other things, "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii); *see also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021). An individual who receives a call in violation of that provision may sue the caller and, if she prevails, may be entitled to considerable statutory damages intended to, in effect, "operate as bounties, increasing the incentives for private enforcement," much "like statutory compensation for

whistleblowers." *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) (Crenshaw, C.J.) (quoting *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014)).

On October 18, 2019, Robin Black received a call to her cell phone that she believes violated the TCPA, both because the call was made with an automatic dialing system and because her number was on the national do-not-call registry, *see* 47 U.S.C. § 227(c). It is undisputed, for the purposes of the present motion, that the call was placed by Vehicle Activation Department, an entity that does business as "VAD." (Doc. No. 59-11 ¶ 2.) The voice on the call offered to sell Black a "vehicle service contract," or "VSC," which Black agreed to purchase. Presumably unbeknownst to VAD, however, Black only made the purchase "in order to ascertain who was responsible for the telemarketing calls she was receiving." (*Id.*)

On October 22, 2019, Black received an e-mail containing documentation for her newly purchased—and, she learned, SunPath-administered[1]—VSC. Satisfied that she had identified the business ultimately behind the telemarketing she received, Black canceled her purchase. (*Id.*) On January 13, 2021, she filed a Complaint in this court against VAD, SunPath, and two other defendants, alleging violations of the TCPA associated with the October 18, 2019 call and similar calls made to her around that date. (Doc. No. 1 ¶¶ 32–34.) Black eventually voluntarily dismissed her claims against one of those other defendants, Northcoast Warranty Services, Inc. (*Id.* ¶¶ 27, 30; Doc. No. 52), The other defendant, Celtic Marketing, LLC, remains formally listed as a distinct

---

[1] SunPath repeatedly stresses that, in its view, it "does not sell the VSCs it administers." (Doc. No. 40 at 3.) The accuracy of that characterization is debatable and depends on how one interprets the term "sell." SunPath, based on the information before the court, does not directly employ the sales force that communicates with consumers. SunPath does, however, provide the ultimately purchased products and profit from their sale. Whether or not that means that SunPath "sells" the VSCs or not is ultimately unimportant to this case, which is about telemarketing calls, not any abstract definition of "seller."

2

party to the case, but it is, at least according to Black and SunPath, "understood to be the same party" as VAD. (Doc. No. 59-1 ¶ 7.)

Black and SunPath agree that it was VAD, not SunPath, that made the call to Black. (Doc. No 59-1 ¶ 3.) SunPath and Black disagree, however, about how to characterize the relationship between SunPath, as the administrator of the VSCs, and VAD, as the customer-facing sales firm. SunPath describes VAD as "an independent third-party company that formerly had an agreement with SunPath, which authorized [it] to market and sell SunPath-administered products on a non-exclusive basis." (*Id.* ¶ 6.) Black, however, argues that "SunPath held a level of control" through the Call Center Marketing Agreement ("CCMA") between SunPath and VAD, such that SunPath should be treated as responsible for the actions of VAD personnel. (*Id.* ¶ 8; *see* Doc. No. 51-4 (CCMA).)

The CCMA granted VAD "authority to solicit Customers" for SunPath's products, pursuant to certain restrictions. (Doc. No. 51-4 at 1.) Among those restrictions was that VAD agreed to "at all times adhere to [SunPath's] written Standards of Conduct prescribed by [SunPath] from time to time and in its sole discretion." (*Id.*) VAD agreed that it would "actively market the Products" and "perform such other acts as are necessary for the proper conduct of the business and for the protection and safeguarding of [SunPath's] interests." (*Id.*) VAD was required to "provide to [SunPath], no less than once a month, all information required by [SunPath] for each Product marketed to Customers." (*Id.*) The agreement, however, included the following disclaimer:

> [VAD] is at all times acting as an independent contractor providing services to [SunPath]. At no time is [VAD] an agent of [SunPath], and this Agreement does not authorize [VAD] at any time to act on behalf of [SunPath]. Nothing herein shall be construed to create a relationship of employer and employee between [SunPath] and [VAD], nor does this Agreement constitute a partnership or joint venture between [SunPath] and [VAD].

3

(*Id.*) VAD and SunPath each had authority to terminate the arrangement with 30 days' written notice. (*Id.* at 3.)

The agreed-to Standards of Conduct were included in the CCMA as an exhibit. Pursuant to those standards, VAD agreed to "operate in accordance with laws and regulations of the Federal Trade Commission, the Federal Communications Commission, the Federal Reserve Board, the United States Postal Service and all other applicable federal, state, and local regulations and laws" and, specifically, to "follow all state and federal do not call laws." (*Id.* at 9, 12 (formatting omitted).) The Standards also specifically forbade VAD from "using an autodialer . . . [t]o any . . . cellular telephone or any other service for which the called party is charged for the call." (*Id.* at 13.)

## II. LEGAL STANDARD[2]

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

---

[2] On March 16, 2021, SunPath and since-dismissed defendant Northcoast Warranty Services, Inc., filed a Motion to Dismiss that appears not to have been ruled on. (Doc. No. 16.) Because the court finds the issues posed by the claims against SunPath to be fully and adequately addressed by SunPath's later summary judgment motion now under consideration, the court will restrict its analysis to that motion.

4

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## III. ANALYSIS

### A. Principles of Liability under the TCPA

A plaintiff establishes a claim for violation of the TCPA's automatic dialing provision if she shows that the defendant (1) placed a call to a cellular or wireless telephone number (2) using any automatic dialing system and/or a prerecorded or artificial voice, (3) without the plaintiff's consent. *Strand v. Corinthian Colleges, Inc.*, No. 1:13-CV-1235, 2014 WL 1515494, at *2 (W.D. Mich. Apr. 17, 2014); *see also Cataldi v. Ocwen Loan Servicing, LLC*, No. 17-11487, 2017 WL 5903440, at *1 (E.D. Mich. Nov. 30, 2017). A similar cause of action exists for a person who receives an impermissible call in violation of a phone number's inclusion on the federal do-not-call registry. *See* 42 U.S.C. § 227(c)(5). Because SunPath did not itself place any qualifying call to Black, it cannot be found to have violated those provisions directly. Accordingly, its liability, if any, must be premised on some form of indirect liability, such as vicarious liability.

The FCC, which oversees the regulatory and administrative portions of the TCPA, addressed the prospect of indirect liability under the Act in *In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574 (2013), a declaratory ruling that has since been cited and applied by the Sixth Circuit. *See, e.g.*, *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233,

at *5 (6th Cir. May 29, 2019). According to the FCC, "the party that is directly liable for unlawfully 'initiat[ing]' [an unlawful] call is the telemarketer that 'takes the steps necessary to physically place [it],' not the seller whose goods or services the telemarketer promotes," but the ultimate seller may nevertheless "be vicariously liable for such violations under federal common law agency principles." *Id.* at 658493 ¶¶ 28–47." *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015) (quoting & citing *DISH Network*, 28 F.C.C. Rcd. at 6575 ¶ 3, 6583 ¶¶ 26–27, 28–47) (emphasis omitted). Pursuant to those principles, a TCPA plaintiff can demonstrate vicarious liability by establishing "facts indicating 'formal agency,' 'apparent authority,' or 'ratification.'" *Lucas*, 2019 WL 3021233, at *5. Black argues that a reasonable finder of fact could conclude that she has established liability under each of those three theories.

## B. Formal Agency/Actual Authority

"[A]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 373 (6th Cir. 2015) (quoting Restatement (Third) of Agency § 2.01 (2006)). Black does not appear to have uncovered any inculpatory behind-the-scenes communications between SunPath and VAD in which the parties agreed that VAD would, or even might, engage in prohibited calling on SunPath's behalf. Rather, Black premises her arguments primarily on the terms of the CCMA—despite the fact that the CCMA, on its face, includes an express commitment by VAD not to commit such actions.

"Actual authority is the authority that the principal intentionally grants to an agent." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 568 (6th Cir. 2006) (citation omitted). "[A]n agent acts with actual authority when, at the time of taking action that has legal consequences for the

6

principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Keating*, 615 F. App'x at 373 (quoting Restatement (Third) of Agency § 2.01 (2006)). The CCMA unambiguously states that SunPath *did not* wish for VAD to violate the TCPA. It is difficult, therefore, to see how the CCMA could support a finding of actual authority to commit the underlying calls to Black, even if it might support a limited finding of agency for some other purpose, such as making the underlying sales. *See id.* (finding lack of actual authority to send text messages, in part because contract did not grant such authority).

"Actual authority can be express or implied," *Zona v. Lincoln Log Homes, Inc.*, 181 F.3d 106 (table), 1999 WL 282666, at *4 (6th Cir. 1999) (quoting Restatement (Second) of Agency § 7 cmt. c (1958)), so it may theoretically be possible for a company in SunPath's position to make statements that superficially appear to authorize only lawful actions on its behalf, while impliedly authorizing unlawful ones under the table. At the summary judgment stage, however, the important question is not what is theoretically possible, but what can be supported with actual, ultimately admissible evidence. *See* Fed. R. Civ. P. 56(c)–(e). By relying on the formal contract between the parties, without any additional evidence of a broader, implicit understanding between SunPath and VAD, Black has placed herself in the difficult position of trying to establish authority to perform an act based on an agreement that clearly and emphatically forbids that act under any circumstances. *See Kern v. VIP Travel Servs.*, No. 1:16-CV-8, 2017 WL 1905868, at *6 (W.D. Mich. May 10, 2017) (finding lack of actual authority under similar contract because the contract "d[id] not confer actual authority on [the telemarketing vendor] to make calls in violation of the TCPA").

Black points to provisions of the CCMA granting SunPath rights that could broadly be referred to as supervisory in nature: the right to receive information about VAD's efforts, the right to dictate standards of conduct, and the right to terminate the agreement and, in effect, "fire" VAD as a seller of SunPath products. Black, however, has not identified any Sixth Circuit authority that would permit the court to conclude that those relatively limited rights are sufficient to establish liability based on actual authority, in spite of directly-on-point contractual provisions forbidding the underlying actions. Because all available evidence weighs against a finding of actual authority to commit calls in violation of the TCPA, SunPath is entitled to summary judgment on this theory.

## C. Apparent Authority

"Apparent authority exists when (1) the principal manifests that another is the principal's agent, and (2) it is reasonable for a third person dealing with the agent to believe the agent is authorized to act for the principal." *Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 279 (6th Cir. 2016) (citing *Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 150 F.3d 590, 593 (6th Cir. 1998)); *accord Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 3:18-CV-00518, 2021 WL 1946645, at *3 (M.D. Tenn. May 14, 2021) (Campbell, J.) (applying test in TCPA case). Although Black argues that the facts that she has established are sufficient to support a finding of apparent authority, she offers little to address the obvious deficiency in such an argument: the fact that SunPath did not manifest anything whatsoever to her until after any violations of the TCPA had already occurred.

"Apparent authority can . . . be created only by the principal's manifestations to a third party. . . . The agent's representations of authority to a third person, standing alone, are insufficient to create apparent authority in the agent to act for the principal." *Trustees of Plasters Loc. 67 Pension Tr. Fund v. Martin McMahon Plastering, Inc.*, 844 F. Supp. 2d 843, 851 (E.D. Mich.

2012) (quoting *Cent. States Se. & Sw. Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1113 (6th Cir. 1986)). Black's description of the defendants' scheme demonstrates why such a theory is a poor fit here. By Black's own admission, the identity of the originator of the products being sold through the underlying telemarketing was concealed from her until after she made a purchase. SunPath did not—and indeed had no opportunity to—manifest an agency relationship to Black prior to or during the underlying calls; it just sent her information after the purchase was completed. Insofar as Black might be entitled to recover from SunPath in the absence of actual authority, therefore, it must be through post-transaction ratification, not apparent authority.

## D. Ratification

As formulated by the FCC in *Dish Network*, the doctrine of liability through ratification provides that "a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits." *In re Dish Network*, 28 F.C.C. Rcd. at 6587. Although Black quickly cancelled her purchase of a SunPath vehicle maintenance contract, a reasonable juror could still find that SunPath, by accepting VAD's sale to Black, accepted the benefit of VAD's call. That does not, however, mean that SunPath's acceptance of a wrongfully obtained sale was necessarily knowing. If all SunPath knew or should have known was that it was accepting a sale—not that it was accepting a sale obtained through an unlawful call—it could not ratify the underlying unlawful act.

There is no evidence before the court that SunPath ever verbally ratified VAD's conduct by, for example, defending the sale to Black as final after having been informed of how that sale was obtained. To the contrary, Black cancelled the sale herself almost immediately, which she was allowed to do. Ratification may also occur by conduct, rather than speech, but typically only if the relevant conduct cannot "be otherwise explained." *Osborn v. Griffin*, 865 F.3d 417, 445 (6th Cir.

9

2017) (quoting Restatement (Third) of Agency § 4.01(2) cmt. d (2006)). All of SunPath's actions in this case are explicable without assuming that it was or should have been aware of any TCPA violations. The CCMA was, on its face, a telemarketing agreement, and telemarketing is not, in and of itself, illegal. There was therefore nothing inherently suspicious about VAD's bringing SunPath sales that it achieved over the phone. Black, moreover, has not identified anything in particular about her purchase that would or should have alerted SunPath that it was the result of an improper call. "The principal's consent to be bound by what the agent has done depends on whether the principal knows the relevant facts . . . ," Restatement (Third) Of Agency § 4.06 (2006), and Black has not identified any evidence that would allow the court to infer that SunPath knew anything other than that VAD was engaging in telemarketing—which VAD has assured SunPath would be done lawfully—to sell SunPath's products. That level of knowledge is insufficient to support liability through ratification.

Black points to this case as an example of why vicarious liability is essential to the purposes of the TCPA. VAD, according to Black, is defunct and may well be incapable of paying any liability that Black establishes. A defunct company is, moreover, not a company that can be deterred. Instead, any number of new robocalling operations—including, potentially, ones involving the same individuals—may well arise to take VAD's place, until those new companies are themselves found out, sued, and replaced by even newer competitors. Permitting recovery against upstream sellers presents a possible way to stanch the *demand* for unlawful telemarketing, as an alternative to chasing one fly-by-night robocalling operation after another in an attempt to reduce the supply. *See In re Dish Network*, 28 F.C.C. Rcd. at 6589 (noting the large number of telemarketers in existence and the challenges it would pose to combating unlawful calls without vicarious liability).

10

A policy argument for vicarious liability, however, is no substitute for establishing that such liability applies in this particular case. The TCPA, as interpreted by the FCC and Sixth Circuit, does, in fact, permit recovery from upstream sellers in a number of situations, but each of those potential routes to liability requires a plaintiff to show more than simply that the caller who violated the TMFCA did so in order to sell the other potential defendant's products. Vicarious liability, rather, requires either some actual authorization, some manifestation of authority, and/or some post-violation ratification of the proscribed action. Because Black has not identified evidence sufficient to support any of those three options, SunPath is entitled to summary judgment as to the claims against it.

## IV. CONCLUSION

For the foregoing reasons, SunPath's Motion for Summary Judgment (Doc. No. 39) is hereby **GRANTED**. Insofar as the Motion to Dismiss filed by SunPath and Northcoast Warranty Services, Inc. remains pending, it is hereby **DENIED** as moot. Black's claims against VAD (and, insofar as it is a distinct entity, Celtic Marketing, LLC) remain pending.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge